**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:23-cv-20480-XXXX**

THREE LEGGED MACHINE INC.
*d/b/a* BLACKBERRY SMOKE,
*a Georgia for-profit corporation*, AND
CHARLES TURNER,

    Plaintiff,

v.

LEGENDS OF MUSIC ROW, LLC,
*a Florida limited liability company*,

    Defendant.
_____/

**COMPLAINT**

Plaintiff, Three Legged Machine, Inc. d/b/a Blackberry Smoke (hereinafter "TLM, Inc." or "Blackberry Smoke" or "Artist") and Charles Turner (collectively, "Plaintiffs"), by and through counsel, hereby file this Complaint for Damages and Injunctive Relief against Defendant, Legends of Music Row, LLC ("Defendant" or "Legends" or "Purchaser"), and for their causes of action allege as follows:

**NATURE OF ACTION**

1.  This is an action for breach of contract and willful trademark infringement filed by Plaintiffs against Defendant who has willfully breached the Contract and Guarantee entered into and existing by and between the parties, and who willfully infringed upon and blatantly disregarded the exclusive trademark rights granted to and vested in Mr. Turner as the trademark owner and rightful designee of the Trademark to the name "Blackberry Smoke" as it relates to live musical performances.

2. Blackberry Smoke is an internationally renowned rock and roll band formed in Atlanta, Georgia. The band has achieved international fame and recognition for its musical recordings and entertaining live shows. The band is largely recognized for its road warrior touring mentality, performing hundreds of live shows throughout the United States and Internationally each year.

3. The band is also known for its work ethic—showing up on time and performing shows through sickness, weather issues, or any other potential issues that might arise in order to perform for its loyal fan base.

4. The band's live performances are a foundation of its business model and they are governed by contracts and guarantees that are signed months in advance so that Blackberry Smoke can schedule tours and provide entertainment to their many loyal fans.

5. TLM, Inc. is referred to in the contract at issue as "Company" and Blackberry Smoke is referred to as "Artist." Defendant is referred to in the contracts as "Purchaser."

6. Mr. Turner is a member of and drummer for Blackberry Smoke and he owns the Trademark for the name "Blackberry Smoke" as it relates to live musical performances. Mr. Turner owns the exclusive United States Trademark for the name "Blackberry Smoke." The Trademark was duly registered with the United States Patent and Trademark Office ("USPT") on March 4, 2014 (US Registration # 4533358) (US Serial # 86085541) (the "Blackberry Smoke Trademark").

7. The Blackberry Smoke Trademark was filed under International Class 41 for "Entertainment services, namely, live musical performances by a musical group" and "providing a website for featuring prerecorded musical audio clips, photographs, news, and reviews in connection with a musical group."

8. Defendant is a music promoter and show purchasing company that purchased and promoted Blackberry Smoke's performance for the Legends of Music Row Concert in Key West, Florida, scheduled for October 15, 2022 (Blackberry Smoke's "Key West Performance").

9. Defendant has willfully and intentionally breached its Contract and Guarantee with Blackberry Smoke.  This is an action to enforce the terms of the Contracts and enforce the Guarantee of payment given to Blackberry Smoke by Defendant, as well as to award damages to Blackberry Smoke for Defendant's trademark infringement.

## PARTIES

10. Plaintiff Blackberry Smoke is a Georgia Corporation doing business across the country with its principal place of business located at 2659 Sharondale Drive, Atlanta, Georgia 30305.

11. Plaintiff Charles Turner is an individual who is a citizen of Atlanta, Georgia.

12. Defendant Legends is a Florida Limited Liability Company with a principal office at 426 Bay Shore Drive, Summerland Key, Florida 33042.  Legends can be served through its Registered Agent, Sheryl Steinmeyer, at 426 Bay Shore Drive, Summerland Key, Florida 33042.

## JURISDICTION AND VENUE

13. This Court has original and exclusive jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 15 U.S.C. § 1121 as the controversy arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

14. This Court has personal jurisdiction over Defendant as discussed fully herein.

15. This Court has general and specific personal jurisdiction over Defendant because, upon information and belief, Defendant can generally be found at home in the Southern District

of Florida. In addition, Defendant has specific contacts with the Southern District of Florida because Defendant is a business operating in the Southern District of Florida.

16. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391, as a substantial part of events giving rise to this case occurred in the Southern District of Florida.

## STATEMENT OF FACTS

17. Plaintiff repeats, re-alleges, adopts, and incorporates each and every allegation contained in the preceding paragraphs, inclusive, as though fully set forth herein.

18. On or about August 16, 2022, Plaintiff and Defendant entered into a binding contractual agreement which governed the specific performance of the Blackberry Smoke Key West Performance at Coffee Butler Amphitheater in Key West, Florida, as part of the Legends of Music Row Festival scheduled for October 15, 2022 (the "Blackberry Smoke Contract" or the "Contract") (attached hereto as Exhibit A).

19. The Blackberry Smoke Contract contained the following unambiguous provision:

"**Paragraph 11.2.  Purchaser Cancellation of Performance**," which expressly states:

> "If, for any reason (including, without limitation, a cancellation under paragraph 11.3 herein below), Purchaser cancels the Performance following the date of execution hereof, Purchaser shall remain liable to Company for the full amount of the Guarantee due hereunder."

(hereinafter referred to as "Guarantee").

20. Therefore, the Blackberry Smoke Contract guarantees payment by Defendant to Plaintiff in the amount of $60,000 regardless of whether Defendant cancelled Blackberry Smoke's Key West Performance or not.

21. In fact, the Contract calls for an initial deposit payment of $30,000 to be made no later than September 15, 2022, with the remaining balance to be paid no later than the evening of the engagement, October 15, 2022.

22. The Contract also required Defendant to provide and pay for mutually agreeable airfare for Blackberry Smoke band members.

23. On September 30, 2022, with no notice to Plaintiff, Defendant started cancelling the previously-booked flights of each of the Blackberry Smoke band members.

24. Defendant also never provided actual notice to Plaintiff that Defendant had cancelled Blackberry Smoke's Key West Performance.

25. Plaintiff has worked for years to establish a world-renowned reputation for its performances and the way it conducts business. Professionals in the touring industry know that Plaintiff will put forth an exciting show, will be on time, will be efficient, and will entertain the fans. Defendant's actions have caused substantial disruption to Plaintiff's business operations and ability to tour effectively. Defendant's cancellation cost Plaintiff the opportunity to tour in other profitable locations during the same time frame as Key West Performance.

26. Plaintiff has suffered harm to its reputation and has been forced to incur substantial time and effort to move forward with making up lost tour dates.

27. Defendant should be deterred from committing acts of a similar nature and punished for willful and intentional conduct. Such conduct is egregious and cannot be allowed in the touring industry, otherwise, promoters will have incentives to enter into contracts knowing they can breach contracts and not pay guarantees if sales do not meet their expectations or other issues arise that make it easier for the Defendant to breach the contract rather than pay the required contractual fees.

28. Plaintiff put forth substantial time, investment, and resources into the production of the Key West Performance and neglected other profitable touring opportunities. Defendant

willfully chose to breach the contracts rather than follow through with the legal obligations it was contractually bound to.

29. Additionally, Defendant used the Blackberry Smoke Trademark in order to promote the festival and sell tickets.

30. Despite cancelling Blackberry Smoke's performance, Defendant continued promoting Blackberry Smoke as an artist that would be performing in the Legends of Music Row Festival, including posting pictures of the band and using the band's trademark name "Blackberry Smoke," all in violation of Mr. Turner's exclusive Trademark-related rights.

31. As of January 23, 2023, Defendant was still promoting "Blackberry Smoke" on its website. *See* Defendant's Key West music festival website (accessible at: www.legendsofmusicrown.com) (relevant screenshots thereof attached as Exhibit B).

32. Fans of Blackberry Smoke have been confused as to whether Blackberry Smoke was performing or not. One fan commented on Facebook "750$ for artists that were [advertised] but not on the lineup." (*See* Facebook screenshot, attached as Exhibit C).

33. Other fans commented about buying tickets with the intention of seeing a band that's no longer on the bill. (*See* Facebook screenshot, attached as Exhibit D).

34. Other fans questioned why Blackberry Smoke was no longer on the bill and whether they backed out. (*See* Facebook screenshot, attached as Exhibit E).

35. Fans express frustration and feelings of being "misled" by Defendant as they had specifically bought tickets to see Blackberry Smoke—a band that had been possibly removed from the bill. (*See* Facebook screenshot, attached as Exhibit F).

36. Blackberry Smoke fans continued to question whether Blackberry Smoke was on the bill, as Defendant continued to indicate they were on the bill, but there was also confusion as to whether they were actually performing. (*See* Facebook screenshot, attached as Exhibit G).

37. By using the name "Blackberry Smoke" to promote the Legends of Music Row Festival, while simultaneously cancelling the band's performance, Defendant has caused substantial confusion among the band's loyal fan base, diluted the name Blackberry Smoke, and caused harm and dilution to the valuable trademark that is the band's name—Blackberry Smoke.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
*(Plaintiff TLM, Inc. v. Defendant)*

38. Plaintiff TLM, Inc. re-alleges, adopts, and incorporates each and every allegation contained in the preceding paragraphs, inclusive, as though fully set forth herein.

39. Plaintiff and Defendant were parties to a valid contract, the Blackberry Smoke Contract.

40. The Blackberry Smoke Contract contains a Guarantee that payment by Defendant to Plaintiff of $60,000, must occur regardless of cancellation of the Key West Performance by Defendant.

41. Defendant breached the Contract when it cancelled the Key West Performance and failed to pay Plaintiff the contractually guaranteed sum of $60,000.

42. Defendant further breached the Contract by failing to pay Plaintiff's out-of-pocket expenses in connection with Plaintiff's anticipated Key West Performance.

43. As a result of Defendant's unlawful actions, as described herein, Defendant has breached its contractual obligations and duties failing to pay Plaintiff in accordance with the

Contract and the Guarantee therein, as well as other contractually required payments, including, but not limited to the band's out-of-pocket expenses, costs, and attorneys' fees.

44. Plaintiff has been significantly damaged in the amount of no less than $60,000, plus out-of-pocket expenses, costs, and attorneys' fees.

45. In addition, Defendant's conduct was malicious, intentional, and reckless such that an award of punitive damages is required.

### COUNT II
### FEDERAL TRADEMARK INFRINGEMENT
*(Plaintiff Charles Turner v. Defendant)*

46. Plaintiff Mr. Charles Turner re-alleges, adopts, and incorporates each and every allegation contained in the preceding paragraphs, inclusive, as though fully set forth herein.

47. Mr. Turner owns all rights, title, and interest in the Federal Trademark of the name "Blackberry Smoke," which has been continually used in commerce since 2001.

48. Defendant has made use of the same name without Mr. Turner's consent.

49. Defendant's use of the name has caused confusion in the minds of consumers and others.

50. Trademark infringement is clear as there is a strong "likelihood of confusion," especially since Defendant's improper promotion of the band caused actual customer confusion.

51. The band name Blackberry Smoke is strong and instantly recognizable. Defendant improperly used the Trademark for Blackberry Smoke to promote live musical performances that did not take place.

52. Defendant's use of the Trademark in commerce infringes on Mr. Turner's rights in the Trademark, and violates 15 U.S.C. § 1114. Defendant's unauthorized use of the Trademark (*i.e.*, the band's name) created an erroneous impression in the minds of consumers.

53. Pursuant to 15 U.S.C. § 1117, Plaintiff Mr. Turner is entitled to recover Defendant's profits and any actual damages he has sustained, as will be proven at trial. Plaintiff is also entitled to recover the costs of this action.

54. Because Defendant's misconduct is intentional and willful, Plaintiff should be awarded three times or treble its actual damages.

55. Because Defendant's misconduct is intentional and willful, this is an exceptional case, and Plaintiff is entitled to an award of attorneys' fees under 15 U.S.C. § 1117.

## COUNT III
## FEDERAL TRADEMARK DILUTION
*(Plaintiff Charles Turner v. Defendant)*

56. Plaintiff Charles Turner re-alleges, adopts, and incorporates each and every allegation contained in the preceding paragraphs, inclusive, as though fully set forth herein.

57. The Blackberry Smoke Trademark is famous under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

58. The actions and conduct of Defendant, as set forth above, constitute dilution of the famous Trademark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

59. Plaintiff Mr. Turner is entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

60. As a direct and proximate result of Defenant's wrongful conduct, Mr. Turner, as Trademark owner, has suffered and will continue to suffer irreparable injury to the reputation and goodwill of his and his band's Trademark, a grievance which has no adequate remedy at law.

61. Pursuant to 15 U.S.C. § 1117, Mr. Turner is entitled to recover damages, in an amount to be determined at trial, from Defendant that were caused by Defendant's unlawful use of the Trademark.

CASE NO.: 1:23-cv-20480-XXXX

### COUNT IV
### (INJUNCTIVE RELIEF)
*(Plaintiff Charles Turner v. Defendant)*

1. Plaintiff Charles Turner re-alleges, adopts, and incorporates each and every allegation contained in the preceding paragraphs, inclusive, as though fully set forth herein.

2. Defendant's ongoing use of the trademarked name Blackberry Smoke in connection with the promotion, advertisement, and distribution of Defendant's music festival infringes Plaintiff's trademark.

3. Defendant is engaged in activities that will result in further unauthorized use of Plaintiff's trademarked name in commerce in a way that is likely to cause further confusion among consumers.

4. There is an actual controversy between Plaintiff and Defendant because Defendant is continuing to use the name Blackberry Smoke without Plaintiff's permission.

5. Plaintiff seeks a preliminary and permanent injunction pursuant to 15 U.S.C. § 1116 to prevent further violation of Plaintiff's rights in the registered Trademark.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment entered in their favor and against Defendant as follows:

1. Judgment entered in favor of Plaintiffs and against Defendant for breach of contract and trademark infringement;

2. For damages to Plaintiff in the amount of $60,000, arising from Defendant's breach of the Contract and Guarantee.

3. For damages to Plaintiff arising from Defendant's breach of Contract, including, but not limited to Blackberry Smoke's unpaid out-of-pocket expenses and any lost profits.

CASE NO.: 1:23-cv-20480-XXXX

4. For actual damages pursuant to 15 U.S.C. § 1117 in the amount of Defendant's profits derived from Defendant's unauthorized use of Plaintiffs' Trademark;

5. For an award of three times Plaintiffs' actual damages and for an award of the costs of this action, all in accordance with 15 U.S.C. § 1117;

6. For a finding that this is an "exceptional case" and an award of attorneys' fees pursuant to 15 U.S.C. § 1117;

7. For preliminary and permanent injunction pursuant to 15 U.S.C. § 1116 to prevent further violation of Plaintiffs' rights in the registered Trademark by Defendant;

8. For pre-judgment and post-judgment interest according to law, as applicable; and

9. For such other and further relief as this Court may deem just and proper.

(*Remainder of Page Left Intentionally Blank*)

CASE NO.: 1:23-cv-20480-XXXX

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiffs respectfully demand a jury trial on all issues so triable.

DATED: February 6, 2023.

        Respectfully submitted,

        **GORDON REES SCULLY MANSUKHANI, LLP**

By:   */s/ Paul Souferis*
Paul Souferis, Esq.
Fla. Bar No. 103169
Miami Tower
100 Southeast Second Street, Suite 3900
Miami, Florida 33131
T: (305) 428 – 5325
F: (877) 634 – 7245
E: psouferis@grsm.com

Joshua D. Wilson (Pro Hac Vice forthcoming)
**GORDON REES SCULLY MANSUKHANI, LLP**
4031 Aspen Grove Drive, Suite 290
Franklin, Tennessee 37067
T. (615) 772 – 9007
F. (615) 970 – 7490
E: jdwilson@grsm.com

*Counsel for Plaintiffs TLM, Inc. & Mr. Turner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 6, 2023, a true and correct copy of the foregoing has been filed and served via the Court's CM/ECF system on all parties and attorneys of record and on this case's service list.

By:   */s/ Paul Souferis*
Paul Souferis, Esq.
Fla. Bar No. 103169